UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY DAVID SMITH,

        Plaintiff,

v.

JONG CHOI, et al.,

        Defendants.

_____/

Case No. 24-cv-11677

HON. MARK A. GOLDSMITH

## OPINION & ORDER (1) GRANTING THE MDOC DEFENDANTS, DEFENDANT YOO, AND DEFENDANT HAYS'S MOTIONS TO DISMISS AND/OR FOR SUMMARY JUDGMENT (Dkts. 40, 59, 77); (2) GRANTING DEFENDANT GLORIA SMITH'S MOTION TO DISMISS (Dkt. 60); (3) GRANTING DEFENDANT DUGAN'S MOTION TO DISMISS (Dkt. 36); (4) GRANTING DEFENDANT KIM'S MOTION TO DISMISS (Dkt. 56); (5) DENYING AS MOOT PLAINTIFF'S MOTION FOR AN EXTENSION OF TIME TO FILE OBJECTIONS (Dkt. 95); AND (6) DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL (Dkt. 94)

Plaintiff Larry David Smith is an inmate in custody of the Michigan Department of Corrections (MDOC). He was, at all times relevant to this case, housed at several MDOC prisons including the Richard Handlon Correctional Facility (RHC); the Michigan Reformatory (RMI); the Cooper Street Correctional Facility (JCS); the Bellamy Creek Correctional Facility (BCF); and the G. Robert Cotton Correctional Facility (JCF).[1] He brought this case under 42 U.S.C. § 1983 alleging that the level of dental care Defendants provided to him violated his Eighth Amendment rights. Compl. (Dkt. 1).

---

[1] The Court adopts and uses initialisms that MDOC uses for its facilities. The Michigan Reformatory correctional facility closed on November 13, 2022. https://perma.cc/793A-NKA7.

Smith sues the following Defendants who are or were corrections and/or medical staff employed or contracted by the MDOC: (i) Jong Choi, the MDOC dental director; (ii) Heidi Washington, the MDOC director; (iii) Gloria Smith, a dentist and contractor to MDOC;[2] (iv) Rebecca Bradley, a dental aide at JCF; (v) Sarah Arden, a dental hygienist at JCF; (vi) Amanda Dugan, a dentist and contractor to MDOC; (vii) Ashley Duncan, a dental aide at JCF; (viii) Heather L. Hays, a dentist and contractor to MDOC; (ix) Kayla Stark-Matheny Brindle,[3] a dental aide at JCS; (x) Sue A. Bidwell, a dental aide at JCS; (xi) Kristin Maxon;[4] (xii) Jennifer Nurenberg,[5] a dental hygienist at IBC; (xiii) Richard Yoo, a dentist and contractor to MDOC; (xiv) Doohak Kim, a dentist and contractor to MDOC; (xv) John Doe; and (xv) Jane Roe.[6] Id. at PageID.2.

Smith alleges that each Defendant was deliberately indifferent to his serious medical needs. Id. at PageID.12. Specifically, he alleges that they failed or refused to provide him with proper dental care, and failed to provide him with a partial bottom denture for five-and-a-half years, which caused damage to his remaining teeth and gums, leading to the loss of more teeth, pain, and suffering. Id.

---

[2] The Court will refer to Defendant Gloria Smith as "Gloria Smith," to differentiate her from Plaintiff Smith.

[3] Smith named both Kayla Stark-Matheny and Kayla Brindle as Defendants, however, the MDOC Defendants' motion to dismiss explains that they are the same person. MDOC Mot. at PageID.159 (Dkt. 40).

[4] Neither Smith nor the MDOC Defendants provide information regarding this individual's role in the alleged events.

[5] Jennifer Hanline is now Jennifer Nurenberg. See R&R at PageID.918, n.1 (Dkt. 84).

[6] The MDOC's motion to dismiss provided details regarding each of the Defendants' roles in the case. Unless otherwise identified as a contractor, the Defendants were MDOC employees.

There are six dispositive motions pending before the Court: (i) Dugan's motion to dismiss (Dkt. 36); (ii) Brindle, Nurenberg, Choi, and Washington's (together, the MDOC Defendants) joint motion to dismiss and for summary judgment on the basis of exhaustion (Dkt. 40); (iii) Kim's motion to dismiss (Dkt. 56); (iv) Yoo's motion to dismiss and/or for summary judgment (Dkt. 59); (v) Gloria Smith's motion to dismiss (Dkt. 60); and (vi) Hays's motion for summary judgment (Dkt. 77).[7]

Pursuant to 28 U.S.C. § 636(b)(1)(A), the Court referred all matters to Magistrate Judge Patricia T. Morris.  10/10/24 O. of Reference (Dkt. 14).  The magistrate judge issued a Report and Recommendation (R&R) on the six dispositive motions on July 31, 2025.  (Dkt. 84).  The magistrate judge served Smith with a copy of the R&R on the same day.  See Text-Only Cert. of Service dated 7/31/25.  However, Smith argued on August 19, 2025, that he never received a copy of the R&R.  8/19/25 Notice (Dkt. 90).  The Court therefore served Smith with another copy of the R&R.  See Text-Only Cert. of Service dated 8/21/25.  Thereafter, Smith moved for an extension of time to file objections to the R&R (Dkt. 95).  In the interest of dispatch, the Court withdraws the reference to the magistrate judge and will decide the six dispositive motions on the basis of the parties' briefs.[8]  The Court therefore denies Smith's motion for an extension as moot (Dkt. 95).

---

[7] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing.  See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).

In addition to the motions described, the briefing includes the following: Smith filed responses to the following: (i) MDOC's motion (Dkt. 64); (ii) Dugan's motion (Dkt. 66); (iii) Kim's motion (Dkt. 68); (iv) Yoo's motion (Dkt. 72); (v) Gloria Smith's motion (Dkt. 73); and (vi) Hays's motion (Dkt. 79).  The following Defendants filed reply briefs: (i) MDOC Defendants (Dkt. 67); (ii) Dugan (Dkt. 69); (iii) Yoo (Dkt. 70); (iv) Gloria Smith (Dkt. 71); and (v) Hays (Dkt. 83).  Kim did not file a reply brief.

[8] Accordingly, the objections to the R&R that Hays (Dkt. 92), the MDOC Defendants (Dkt. 91), Gloria Smith (Dkt. 89), and Kim (Dkt. 87) filed are denied as moot.

## I.    BACKGROUND

Smith's complaint explains that, in the years prior to his arrest in March 2016, he had spent approximately $20,000.00 on "root canals, caps/crowns, bridges" etc. to save his teeth.  Compl. at PageID.13.  In late February 2016, before his arrest, Smith had eight of his lower teeth extracted in preparation for a partial bottom denture.  Id.  He was arrested, at age 58, just days before the denture was ready and he never received it.  Id.  After his conviction in October 2017, Smith entered MDOC custody with "only eight front, bottom teeth… (no bottom molars-chewing teeth), and no partial, bottom denture."  Id.  Thus, he explains, he entered MDOC custody with less than the necessary number of teeth "to do all biting, tearing, and chewing of food for several years, which put tremendous undue strain and stress on those few teeth [that remained]."  Id.  His twelve top teeth, however, were "in very good condition" at that time.  Id. at PageID.14.

After incarcerating Smith at RCG from October 2017 to February 2018, MDOC transferred him to RMI.[9]  Id. at 14–15.  Smith sent a health care request to RMI dental staff on August 1, 2018 for "dental care, including a desperately needed partial bottom denture."  Id. at PageID.15 (punctuation modified).  Defendant Jennifer Nurenberg, a dental hygienist at RMI, responded to Smith's request, pointing to a policy directive, PD 04.06.150, and advising him that he had to spend two years in MDOC custody before he could obtain non-emergency dental care.  Id.  Smith submitted healthcare requests for dental care on October 18, October 23, and November 4, 2019.  Again, Nurenberg responded, stating that Smith had not been in MDOC custody for two years yet.  Id.

---

[9] Smith argues that the MDOC dental policy directive PD 04.06.150 prevented him from obtaining dental care for two years beginning in October 2017.  Since he was never out on bond prior to his conviction, he had a total of five years without dental care.  Id. at PageID.13–14.

At the end of November 2019, Defendant Dr. Doohak Kim treated Smith.  Id.  Kim told Smith that he "wanted to extract [a] three tooth bridge… because one end had become loose and MDOC policy prohibits cementing it back in place."  Id.  The bridge, Smith explained, was put in place before his arrest and contained four upper teeth.  Id. at PageID.14.  Kim "put Plaintiff on a long waiting list to have any teeth extracted or filled" but, at the same time, Smith also alleges, Kim refused/failed to even put Plaintiff on the waiting list" for his partial denture.  Id. at PageID.15.

In "Sept./Oct. of 2020," Smith sent a healthcare request to RMI dental staff seeking a tooth extraction because one of his teeth "had finally broken, became loose, and was very painful due to years of undue strain and stress."  Id. at PageID.16.  Defendant Dr. Richard Yoo extracted the tooth in or around September/October of 2020.  Id. at PageID.16 n.4.

In late January of 2021, MDOC transferred Smith from RMI to JCS.  Id. at PageID.16.  On about May 4, 2021, Defendant Dr. Heather Hays and Defendant Kayla Brindle, a dental assistant, treated Smith.  Id.  Hays told Smith that MDOC required his consent before she could extract his top tooth bridge.  Id.  Absent consent, Hays explained, Smith would not be placed on a waitlist for partial dentures, which Smith wanted for both his top and bottom teeth.  Id.  Hays explained to Smith that he needed a top tooth extracted.  Id.  Smith alleges that Hays told him "that she would do whatever was necessary to restore and save the top teeth … so they could be used to anchor a partial top denture."  Id. at PageID.16–17.  Soon thereafter, Hays extracted four of Smith's top teeth and provided "two minor surface fillings" on two of Smith's bottom teeth."  Id. at PageID.17.

Smith sent a healthcare request to JCS dental staff on June 9, and again on June 11, 2021 stating that he "desperately needed both a partial bottom denture, and also a partial top denture."  Id. (punctuation modified).  Defendant Sue Bidwell, a dental aide at JCS, responded that Smith

was "on the treatment list and would be seen when he reached the top of the list." Id.  On June 15, 2021, Smith sent another healthcare request stating that his cap/crown came off of his bottom tooth. Id.  Smith saved it. Id.  Defendant Kayla Brindle, a dental aide at JCS, told Smith that he would be scheduled for a tooth extraction, and Hays extracted the tooth on June 17, 2021. Id.

On July 13, August 13, September 13, October 13, November 13, December 13, 2021, and again on January 13 and March 13, 2022, Smith sent healthcare requests to JCS dental staff stating that he only had three top teeth left that met any bottom teeth. Id.  He requested "top and bottom dentures" as well as "urgently needed" repairs." Id.  Brindle responded that Smith's teeth required cleaning and fillings before he could obtain partial dentures. Id.  After his November 13, 2021 request, Brindle responded indicating that Smith "was on the list." Id. at PageID.18.

Hays met with Smith on September 2, 2021 and filled in "minor, surface cavities" on two bottom teeth. Id.  Smith states "at no time did Dr. Hays make any effort to restore or save Plaintiff's only three top teeth… that met any bottom teeth (as she previously promised to do)." Id.

On November 10, 2021, Smith met with Defendant Sarah Arden, a dental hygienist, "to have his remaining teeth cleaned, which dental staff had been stating for many months had to be done before Plaintiff's partial dentures (now top and bottom) could be made." Id.  Smith reported that part of one of his top teeth had broken off "due to extreme, undue stress for several years." Id.  Smith states that MDOC dental director, Defendant Dr. Jong Choi, "cosigned Sarah Arden's report on 11/15/21." Id.

On about March 22, 2022, Choi saw Smith and filled in "minor, surface cavities" on two of his bottom teeth. Id.  Choi told Smith that "the cavities were so minor that he normally would not even put any fillings in them, but the [the procedure] was [already] scheduled by other dental staff; [he also] said unnecessary fillings were the cause of several months of needless delay in

making Plaintiff's partial dentures (top and bottom)." <u>Id.</u> at PageID.18–19.  Choi told Smith that his three remaining top teeth that met with his bottom teeth "were then in need of major restoration in order to be saved." <u>Id.</u> at PageID.19.  Choi "assured Plaintiff that he would do whatever was necessary to restore and save those three teeth… so those teeth could be used to anchor a partial top denture (needed after MDOC dental staff had extracted 5 top teeth)." <u>Id.</u> (punctuation modified).

Choi also indicated that he would add a note to Smith's records "informing other MDOC dental staff that only he (Dr. Choi) was to treat Plaintiff to ensure Plaintiff's three top teeth … were restored and saved." <u>Id.</u>  Smith claims that Choi "spent about ten minutes at the end of the session trying to convince Plaintiff not to take legal action/lawsuit against MDOC dental staff." <u>Id.</u>

In mid-July 2022, MDOC transferred Smith from JCS to IBC.  <u>Id.</u>  Defendant Kim met with Smith at IBC on about August 22, 2022 and recommended that all of Smith's top teeth be extracted." <u>Id.</u> at PageID.19–20.  On August 29, 2022, Kim met with Smith and extracted one top tooth, which had broken off "due to extreme undue stress for several years." <u>Id.</u> at PageID.20.  Smith alleges that Kim "claimed Plaintiff had signs of oral cancer, but no other dentist, before or after, has ever stated that Plaintiff showed any signs of oral cancer." <u>Id.</u>  Smith explains that "anyone would be highly stressed and very concerned" about such a report. <u>Id.</u>

In September 2022, Smith was transported to MDOC's Duane Waters Medical Center in Jackson, MI to have all of his top teeth extracted.  <u>Id.</u>  Smith refused consent and further alleges that, once there, the oral surgeon at the medical center "saw no reason to extract the teeth." <u>Id.</u>

In November of 2022, while at JCF, one of Smith's front top teeth broke and became painful.  <u>Id.</u>  He sent a healthcare request to JCF dental staff on November 5, 2022, which he

marked as "urgent," explaining that he required an extraction.  Id.  He sent a second request on November 6, 2022.  Id.  On November 9, Defendant Rebecca Bradley, a dental aide, told Smith that a dentist would evaluate his chart.  Id.  Smith sent a third healthcare request on November 9, again marking the request urgent and explaining that he was in "excruciating pain."  Id. at PageID.21–22.  On November 12, he sent a fourth healthcare request.  Defendant Arden responded that Smith was "to be scheduled soon."[10]  Id. at PageID.22.

On November 23, 2022, Smith saw Defendant Dr. Gloria Smith for a dental evaluation. Id.  Smith explains that he had been using the pain medication prescribed to him for spinal stenosis to dull his tooth pain, but that this had depleted the supply of his medication for its intended purpose, so he wanted more medication.  Id.  He alleges that JCF staff refused to refill his pain medication "for weeks."  Id.  He alleges that Gloria Smith told him "his suffering was his own fault" for not having the extraction performed in September 2022.  Id.  He alleges that Gloria Smith "refused to provide any effective pain medication" when she extracted the tooth at issue.  Id. at PageID.23.  Gloria Smith told Smith that his medical records showed he was allergic to acetaminophen, which, Smith argues, is false.  Id.

In addition to the top tooth incident, Smith also sent JCF staff a healthcare request for his partial bottom denture.  Id.  Defendant Bradley responded "to watch the call out."[11]  Id.  On October 6, 2022, Gloria Smith and Defendant Dr. Amanda Dugan met with Smith and made an impression for the bottom denture.  Id.  They explained that the process was a three-step process with about 30–45 days between each step.  Id.

---

[10] Plaintiff does not explain why Arden, who he previously described as working at JCF, responded to his healthcare request at IBC.

[11] The parties do not define a "call out" but the Court interprets it to mean a signal to the inmate that it was his turn for a dental appointment.

On November 16, 2022, Smith sent a healthcare request stating that 45 days had passed and that he had not been called out for step two. Id. at PageID.23–24. Bradley responded that Smith was "scheduled soon." Id. Smith sent healthcare requests for step 2 on November 22, December 13, and December 18, 2022. Id. at PageID.24. Dugan responded, stating Smith would be "scheduled [for his step 2 appointment] soon." Id. On December 21, 2022, Smith was seen for step 2, and on February 17, 2023, he was seen for step 3 of his bottom denture process. Id. Smith received the denture on April 7, 2023. Id.

On April 16, 2023, Smith sent a healthcare request to JCF dental staff stating that inserting and removing the new denture "brought a tear to his eye" and "it was impossible to eat with it," calling it a "torture device." Id. Dugan responded that Smith would be scheduled for an adjustment. Id. On June 7, 2023, Smith sent a healthcare request to staff stating that the denture was "useless" for chewing and needed replacement. Id. JCF dental staff tried adjusting the denture on June 14, 2023. Id.

On August 15, 2023, MDOC staff conducted a "shake down" search of Smith's housing unit at JCF. Id. at PageID.25. Smith had taken his denture out overnight and the denture was lost in the search. Id. MDOC staff instructed Smith to file a grievance on a "DTMB form," however, JCF's grievance coordinator told Smith that "grievances filed due to the shakedown would be rejected."[12] Id. The grievance coordinator also told Smith that he would approve Smith's request for the denture, and that JCF dental staff would make Smith a new one. Id. On October 3, 2023, JCF dental staff told Smith that they needed a copy of the approved DTMB form before they would

---

[12] Smith does not explain what "DTMB" means.

make a new denture.  Id.  On March 5, 2024, staff approved Smith's DTMB request for other items included on the form, but not the denture.  Id.

The Court will separately address Smith's grievances related to the incidents he describes. Smith filed this lawsuit on June 28, 2024.  Compl.  He identifies his claim as an Eighth Amendment claim brought under 42 U.S.C. § 1983.  Id. at PageID.10.  He describes his claim against all Defendants as one of "deliberate indifference to Plaintiff's serious medical needs."  Id. at PageID.12.[13]

## II.   ANALYSIS

Defendants filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6)[14] and motions for summary judgment under Rule 56.[15]  First, the Court will address the motions that raised exhaustion as an affirmative defense.  Then, it will address the remaining motions on their merits.

---

[13] Though he also cites PD 04.06.150 as a "primary cause" of the delay in receiving dental care, he has not specifically made any allegations arguing that this policy was violative of the Constitution, outside of its impact on his deliberate indifference claims.  Id. at PageID.12 n.1.

[14] On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief."  Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007) (citing Carver v. Bunch, 946 F.2d 451, 454–455 (6th Cir. 1991)), cert. denied, 552 U.S. 1311 (2008).  To survive a Rule 12(b)(6) motion, the plaintiff must allege sufficient facts to state a claim to relief above the speculative level, such that it is "plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The plausibility standard requires courts to accept the alleged facts as true, even when their truth is doubtful, and to make all reasonable inferences in favor of the plaintiff.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Twombly, 550 U.S. at 555–556.

[15] In assessing whether a party is entitled to summary judgment, the Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007).  A court will grant a motion for summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can survive summary judgment only by coming forward with evidence showing there is a genuine issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1985).

### A.  Motions Addressing Exhaustion

### 1.      MDOC Defendants, Yoo and Hays's Motions

MDOC Defendants, Yoo, and Hays all argue that the Court should dismiss Smith's complaint because he failed to properly exhaust his claims under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (PLRA).[16]   MDOC Mot. at PageID.173–181 (Dkt. 40); Yoo Mot. at PageID.643–644 (Dkt. 59); Hays Mot. at PageID.861–864 (Dkt. 77).   Exhaustion is a threshold issue.  If Smith did not properly exhaust his claims against the MDOC Defendants, Yoo, or Hays, then the Court need not analyze these Defendants' other arguments because the non-exhausted claims will be dismissed.[17]

An incarcerated plaintiff must exhaust all administrative remedies before filing any "inmate suit[ ] about prison life."  Porter v. Nussle, 534 U.S. 516, 532 (2002) (citing PLRA).  As set forth in MDOC Policy Directive PD 03.02.130, individuals incarcerated with the MDOC must follow a three-step grievance procedure to exhaust their administrative remedies.   See PD 03.02.130.[18]  Per this process, after attempting to resolve the issue with the applicable MDOC staff

---

[16] MDOC and Yoo also argue that certain of Smith's claims are barred by the statute of limitations. MDOC Mot. at PageID.165–167; Yoo Mot. at PageID.644–645.  MDOC Defendants Choi and Washington, as well as Defendants Yoo and Hays also argue that Smith fails to state a claim against them under § 1983.  MDOC Mot. at PageID.168–173; Yoo Mot. at PageID.638–643; Hays Mot. at 855–860.   The Court need not address these arguments, however, because the exhaustion analysis is dispositive.

[17] The Court addresses exhaustion only with respect to the Defendants who raised the issue of exhaustion in their motions.  Several other Defendants did not address exhaustion at this stage.  "If a defendant does not raise non-exhaustion in the pleadings or cannot carry the burden of proof at later stages of the case, a court will consider the inmate's claim on the merits." Pierce v. Rowland, No. 20-5731, 2021 WL 3929549, at *1 (6th Cir. Sept. 2, 2021).

[18] The MDOC Defendants explain that some of Smith's grievances arose under a 2019 version of P.D. 03.02.130; thus the 2019 version applies.  The changes in the 2023 version of P.D. 03.02.130, MDOC explains, "do not have any bearing on the exhaustion analysis in this case."  MDOC Mot. at PageID.176.

member, a grievant must (i) file a Step I grievance using a designated form, after which MDOC files a response; (ii) file a Step II grievance if the grievant is dissatisfied with the MDOC's response at Step I, after which MDOC files a Step II response; and (iii) file a Step III grievance if the grievant is dissatisfied with the MDOC's response at Step II, after which MDOC files a Step III response.  See id.

Exhaustion gives an agency " an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures."  Woodford v. Ngo, 548 U.S. 81, 89 (2006) (punctuation modified).  It further promotes efficiency, allowing the agency to resolve claims without going to court.  Id.  The exhaustion process serves "to put the prison and individual officials on notice of the claim."  Jones v. Bock, 549 U.S. 199, 205 (2007).  The Sixth Circuit characterizes this process as a "fair notice standard."  Burton v. Jones, 321 F.3d 569, 575 (6th Cir. 2003), abrogated on other grounds by Jones, 549 U.S. 199.

At issue in the motions filed by MDOC Defendants, Yoo, and Hays is the provision in PD 03.02.130 that states:

> The issues [in the grievance] should be stated briefly but concisely.  Information provided [in the grievance] is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places, and names of all those involved in the issue being grieved are to be included.

PD 03.02.130 at PageID.188 (Dkt. 40-2).

The MDOC Defendants argue that Smith has filed 50 grievances through Step III, ten of which are identified in Smith's complaint or are related to the issues alleged in the complaint.  MDOC Mot. at PageID.161 (Dkt. 40).  Of those ten grievances, they argue, none appropriately

identified Choi, Washington, Brindle, or Nurenberg.[19]  Id. at PageID.180.  Unhelpfully, the MDOC

Defendants attached all of Smith's Step III grievances to their motion, even those unrelated to

dental care, resulting in hundreds of unnecessary pages filed on the docket in this case.  See Ex. 3

to MDOC Mot. (Dkts. 40-4, 40-5, 40-6, 40-7, 40-8).

The MDOC Defendants do not identify what pages, among the hundreds, contain the

applicable grievances.  It is not the Court's job cull through hundreds of pages to find the applicable

grievances so it can evaluate their contents.  "A district court is not ... obligated to wade through

and search the entire record for some specific facts that might support" a claim.  InterRoyal Corp.

v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989).  Rather, it is the moving Defendants' burden to

demonstrate that Smith failed to exhaust by a preponderance of the evidence.  Morgan v.

Trierweiler, 67 F. 4th 362, 366 (2023).  However, as discussed in further detail below, Smith does

not deny that he failed to include the names of these Defendants, and, thus, the Court need not

address the MDOC Defendants' filing deficiency further.

Although Smith does not dispute that he failed to name these Defendants, he offers

arguments to excuse that failure.  One is that he "at least implied that Choi and/or Washington

were responsible for the official MDOC dental policy that was the root cause of Plaintiff's

harm/injuries."  Resp. to MDOC at PageID.693 (Dkt. 64).  However, this does not address or cure

---

[19]  Similarly, Yoo also argues that he only treated Smith on one occasion, "while at RMI 'in
Sept/Oct. of 2020.'"  Yoo Mot. at PageID.635 (Dkt. 59).  He argues that, while Smith filed
numerous grievances related to dental care, "he has not filed any grievance against Dr. Yoo related
to the care and treatment provided by Dr. Yoo."  Id. at PageID.644.

Hays makes a similar argument to the MDOC Defendants and Yoo.  She argues that, per Smith's
complaint, she provided dental care to Smith on four occasions in 2021: on May 4, May 14, June
17, and September 2.  Hays Mot. at PageID.840, 861 (Dkt. 77).  She argues that, while the dental
treatment that she provided to Smith on one occasion in June is referenced in one grievance, it is
nonspecific, nor is she named, and he otherwise failed to follow the correct grievance procedures.
Id. at PageID.840.

the problem of failing to comply with the clear dictate of PD 03.02.130 that he state their names in the grievances.

Smith also argues that he did not know the name(s) of the various dental staff when he filed the grievances. Resp. to MDOC at PageID.700; Resp. to Yoo at PageID.788; Resp. to Hays at PageID.889. And, he says, there "is typically only one dentist, and only a handful of dental staff at any MDOC prison during a given time[] period," so it should not have been difficult for Defendants to deduce to whom he was referring in his grievances. Resp. to MDOC Mot. at PageID.702 (punctuation modified). Thus, he argues, the MDOC Defendants were on "fair notice" of his claims. He makes similar arguments in response to the motions filed by Yoo and Hays. Resp. to Yoo at PageID.788; Resp. to Hays at PageID.889.

These arguments, however, do not provide a justification for Smith's failure to comply with PD 03.02.130's requirement that he set forth, at Stage I, the "names of all those involved in the issue being grieved." PD 03.02.130 at PageID.188. Excusing his failure would undermine the "fair notice" purpose the grievance system is meant to provide.

The Court, therefore, grants the motions to dismiss filed by as to the MDOC Defendants, Yoo, and Hays.

### 2. Gloria Smith's Motion

Defendant Dr. Gloria Smith also moves to dismiss and, in relevant part, makes a similar argument that the one made by MDOC Defendants, Yoo, and Hays: Smith failed to name her in any of his grievances. See Gloria Smith Mot. at PageID.670–673. In his response, Smith does not dispute that he failed to name her in his grievances.

The Court analyzes Gloria Smith's motion separately from the others because Smith has made several additional arguments in response to Gloria Smith's motion that he did not make in response to the other Defendants' motions, which the Court will briefly address.

14

First, Smith argues that Gloria Smith waived her arguments regarding sufficiency of the grievance(s) because the MDOC addressed the grievance(s) on the merits. Id. at PageID.823. He attached two grievance forms JCF-2211-2367-12A1, at PageID.826 (Dkt. 73), and JCF-2212-2650-2A2, id. at PageID.828, as evidence of this "waiver." Second, he argues that the Court should apply the continuing violation doctrine and find that Smith did not need to address Gloria Smith, specifically, in his grievance, to satisfy the exhaustion requirement. Id. at PageID.824–825.[20] Neither of these arguments has merit.

As to the waiver argument, Reed-Bey v. Pramstaller, 603 F.3d 322 (6th Cir. 2010) explains the circumstances under which a grievance waiver can occur. In Reed-Bey, a prisoner submitted a grievance that failed to specifically identify any individual, even though an MDOC procedural rule required the inmate to do so. Id. at 326. Rather than deny the grievance on procedural grounds, the MDOC facility resolved the grievance on the merits. The Sixth Circuit found that the prisoner had properly exhausted his administrative remedies, explaining that "[w]hen prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." Id. at 325.

Smith provides no evidence of waiver related to either JCF-2211-2367-12A1 or JCF-2212-2650-2A2. Indeed, he named another individual dental staff member, Rebecca Bradley, in JCF-2211-2367-12A1. See JCF-2211-2367-12A1 at PageID.826. The fact that he specifically named another individual in his grievance demonstrates that he clearly understood the requirement that

---

[20] He also argues that the MDOC grievance process is "effectively unavailable." This argument misses the mark. The Sixth Circuit has held that a prisoner can argue the grievance process is "effectively unavailable" where prison officials refuse to provide prisoners with grievance forms. See Lamb v. Kendrick, 52 F.4th 286, 297 (6th Cir. 2022). Smith makes no such allegation here and, indeed, the hundreds of pages of Smith's grievance forms that MDOC filed on the docket in this case demonstrate that this situation does not involve such refusals.

he identify individuals by name.  Additionally, the MDOC rejected JCF-2211-2367-12A1 at Step III because Smith was "missing Step II grievance and response."  Id. at PageID.827.  Thus, he failed to take this grievance through all three of the required steps of PD 03.02.130, so it fails regardless of the fact that he failed to name Gloria Smith.

As to the second grievance that Smith argues MDOC waived by addressing substantively, JCF-2212-2650-2A2, it is not clear that Smith exhausted this grievance through Step III, which he was required to do.  Gloria Smith does not argue that Smith did not exhaust this grievance through Step III, and it is her burden to make this argument.  Morgan, 67 F. 4th at 366.  Despite this, the Court reviewed the authenticated Step III report that the MDOC Defendants attached to their motion to dismiss, and this grievance is not listed.  See Step III Grievance Report at PageID.205–222 (Dkt. 40-4).  Therefore, the Court rejects Smith's second waiver argument.

The Court also rejects Smith's "continuing violation" argument.  The leading case on this issue is Morgan, 67 F4th 362.  There, five days after arriving at the prison, the plaintiff prisoner filed a grievance for its failure to provide him with meals consistent with his religion.  Id. at 364.  It held that the plaintiff was not required to file further grievances every single time the prison failed to provide him with appropriate meals because the plaintiff "already put the prison officials on notice of unconstitutional conduct, and therefore requiring repeat grievances for the same course of conduct would exceed the requirements of the PLRA."  Id.

The circumstances in this case are different.  In Morgan, the defendants did not argue that the plaintiff failed to name them in Step I of his applicable grievance(s), Smith does here.  In Morgan, the plaintiff sued the warden of the prison.  Here, Smith sued numerous individual dental staff and contractors, which the parties do not dispute changed depending on the facility in which Smith was incarcerated.  Thus, even if Smith had named an individual dental professional in his

grievances, that would not have sufficed to put other, unnamed defendants on notice of his ongoing claim. Even if the continuing violation doctrine applied, the grievance form itself must still sufficiently give Defendant Gloria Smith notice of the continuing violation for which she is allegedly responsible. Neither JCF-2211-2367-12A1 nor JCF-2212-2650-2A2 does that.

In <u>Morgan</u>, the Sixth Circuit observed that the plaintiff's allegations in his grievances were "fairly consistent over time" in their content. <u>Id.</u> at 368. They reflected an "attempt to resolve a single course of unconstitutional conduct." <u>Id.</u> The plaintiff in <u>Morgan</u> gave an incident date range rather than pinning the incident at issue to a single date. <u>Id.</u> His later-filed grievances stated, in relevant part, "I am still being denied my rights to practice my religion," which the Court found as further evidence that the grievances framed the violation at issue as continuous. <u>Id.</u>

Not so here. For example, grievance JCF-2212-2650-2A2 states, in relevant part

The issue is that dental staff have refused to name the person(s) responsible for the excessive delays in me receiving my bottom, partial denture. … I submitted a health care request on 12/18 that only asked for an answer to that question. I submitted a 2nd health care request to dental on 12/21 stating I'd file a grievance if I did not get that question answered. No response to either health care request. Grievance policy states I should name the person(s) responsible. Relevant background information only: I needed a bottom, partial denture when I entered the MDOC Oct of 2017 (over 5 years ago)[.] I've needlessly lost several top teeth due to having no bottom teeth to chew with. It takes less than one month to make a partial denture. No valid excuse for the delays.

<u>Id.</u> at PageID.828.

The subject of this grievance is Smith's desire to find out who is responsible for the delay in providing him with the dental care he wanted, so that he could later name them specifically in a future grievance. His allegations in the complaint regarding Gloria Smith have nothing to do with her withholding information regarding her name or anyone else's name. Even if he had taken this claim through Step III, which it is not clear he did, the grievance does not give Gloria Smith "fair notice" of Smith's claims against her.

Because Smith did not properly exhaust, the Court grants Gloria Smith's motion to dismiss.[21]

### B.  Dugan's Motion to Dismiss

Defendant Dr. Amanda Dugan, a dentist who was contracted to work for the MDOC, moves for dismissal under Rule 12(b)(6).  Dugan Mot. (Dkt. 36).  The thrust of Dugan's motion is that Smith has not set forth sufficient facts alleging that she was deliberately indifferent to his serious medical needs, and, therefore, he does not state a claim against her under the Eighth Amendment.  Id.

An Eighth Amendment deliberate indifference claim "has two components, one objective and one subjective."  Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001).  The objective component requires the plaintiff to allege that the medical need at issue is "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994).  The subjective component requires the plaintiff to allege "facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.  Farmer, 511 U.S. at 837."  Comstock, 273 F.3d at 703.  Under the subjective component, "an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind."  Estelle v. Gamble, 429 U.S. 97, 105–106 (1976) (punctuation modified).

Here, Dugan argues that Smith only mentions her once in his complaint, where he identifies her "as an 'assistant' to 'Dr. Smith' who took the first set of impressions for a partial denture on or about October 6, 2022."  Dugan Mot. at PageID.139–140.  Dugan is not otherwise mentioned

---

[21] Because Gloria Smith's motion is granted based on exhaustion, there is no need to address her additional arguments under Rule 12(b)(6).

in the complaint nor does Smith "make any specific allegations against Dr. Dugan" or "otherwise imply that Dr. Dugan had anything to do with MDOC's decisions" regarding Smith's treatment. Id. at PageID.140.

In response, Smith argues first that he should be permitted to take discovery on Defendants, including Dugan, in order to "more fully develop, and substantiate," his allegations.  Resp. to Dugan Mot. at PageID.731 (Dkt. 66).  He also disagrees with her argument that he failed to allege specific actions or inactions of Dugan, stating, "Plaintiff's Complaint presented 15 pages of specific allegations and 13 pages of exhibits.… All of same must be liberally construed, accepted as true at this stage, AND viewed in the light most favorable to Plaintiff."  Id. at PageID.732 (emphasis in original).  He further argues that his allegations regarding his treatment at JCF in general are applicable to Dugan specifically because she was one of very few dental staff at JCF. Id.  Though, he admits he "cannot yet state precisely who was responsible for specific inactions/actions as alleged" in the complaint.  Id. at PageID.732–733.  Dugan's reply brief does not present any additional arguments.

The Court agrees with Dugan that Smith has failed to allege any specific facts related to her that would satisfy either the subjective or objective components of Smith's Eighth Amendment violation.  Smith identified Dugan only as an "assistant" to another dental professional, who had contact with Smith on one day to make an impression for his bottom denture.  This fails to demonstrate either the subjective or objective component.  Indeed, it fails to identify anything at all that Dugan allegedly did wrong or failed to do entirely.

Smith cannot rely on his general allegations regarding the JCF facility or MDOC's dental care in general to sustain his claim against Dugan.  Instead, Smith must allege that Dugan had personal

involvement in violating his constitutional rights.  Murphy v. Grenier, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability.").

Accordingly, the Court grants Dugan's motion and dismisses Smith's claims against her.

**C.      Kim's Motion to Dismiss**

In his motion to dismiss, Defendant Dr. Doohak Kim  argues that Smith insufficiently plead his deliberate indifference claim . Id. at PageID.616–618.  As discussed above, a deliberate indifference claim under the Eighth Amendment has both an objective and subjective component. Farmer, 511 U.S. at 834.  A plaintiff must sufficiently plead both to overcome a motion to dismiss. Smith fails to do so here.

Smith alleges that, in November 2019, while incarcerated at RMI, Kim extracted one of Smith's top teeth, which had broken.  Compl. at PageID.15.  He explains that, after his teeth were cleaned, Kim wanted to extract a second top tooth (tooth #9) and also provide a filling to another tooth."  Id.  Kim also stated that he wanted to extract Smith's three-tooth bridge, "because one end had become loose and MDOC policy prohibits cementing it back in place."  Id.  Rather than conduct these procedures, Smith alleges, "Dr. Kim just put Plaintiff on a long waiting list to have any teeth extracted or filled, and refused/failed to even put Plaintiff on the waiting list to receive a desperately needed partial bottom denture."[22]  Id. (punctuation modified).

Years later, in August 2022, while incarcerated at IBC, Smith saw Kim again.  He alleges that around August 22, 2022, Kim evaluated his teeth and suggested a plan to "extract ALL of Plaintiff's remaining top teeth."  Id. at PageID.19–20.  Days later, on August 29, 2022, Kim

---

[22] Later, in "Sept./Oct. of 2020," Smith sent an urgent healthcare request to RMI because tooth 9, which Kim indicated he wanted to remove approximately a year prior, broke, became loose, and was very painful.  Compl. at PageID.15–16.  He alleges that another Defendant, Dr. Yoo, extracted that tooth.  Id. at PageID.16.

extracted one of Smith's top teeth, which had broken.  He alleges that "without Plaintiff's knowledge or consent, Dr. Kim scheduled for Plaintiff to be transported to MDOC's Duane Waters Medical Center in Jackson, MI to have all six of Plaintiff's remaining teeth … extracted."  Id. at PageID.20.  Smith refused to give consent for this treatment and he states that the remaining top teeth "remain trouble-free to this day," and that the oral surgeon at Duane Waters "said he saw no reason to extract the teeth."  Id.

Lastly, Smith's complaint alleges that Kim "claimed Plaintiff had signs of oral cancer, but no other dentist before or after, has ever stated that Plaintiff showed any signs of oral cancer; anyone would be highly stressed and very concerned about oral cancer."  Id. (emphasis in original).

Kim argues that there is no allegation that he "was responsible for or acted with indifference toward Plaintiff's medical needs."  Kim Mot. at PageID.617.  He argues that "[o]bjectively, the treatment rendered was consistent with the diagnosis; a referral was made and the oral surgeon did not remove Plaintiff's teeth."  Id.  He argues as to the subjective component that, "[t]here is no allegation that Dr. Kim's treatment was improper, nor that Dr. Kim undertook the plan of treatment with the intent to consciously expose the Plaintiff to excessive risk of serious harm."  Id. at PageID.618.

In his response brief, Smith asks that the Court delay considering dismissal until he has had an opportunity to conduct discovery.  Resp. to Kim Mot. at PageID.757 (Dkt. 68).  He also argues that Kim's motion fails to address his treatment of Smith at RMI in 2019, "which is the root of the problem in this case."  Id.  Smith then argues the Court should not dismiss his claim against Kim because it has an obligation to liberally construe a pro se plaintiff's complaint at this stage of the litigation.  Id. at PageID.758.

Smith more specifically argues that Kim was the dentist at RMI while Smith was incarcerated there, that Kim knew Smith had been in the custody of MDOC for over 24 months "without ANY dental care," and knew that Smith "desperately needed a partial bottom denture" for several years. Id. (emphasis in original) (punctuation modified). He knew that Smith needed extractions and fillings, but he "provided NO actual dental care, and failed/refused to even put Plaintiff on the waiting list" to receive the denture." Id. at PageID.759. Smith reiterates his other allegations in his complaint related to Kim's treatment at IBC, emphasizing that "Kim is the only dentist (of several) that wanted to have ALL of Plaintiff's top teeth extracted AND the only dentist to claim Plaintiff showed signs of oral cancer." Id. at PageID.760 (emphasis in original).

Smith's complaint, even when read liberally, fails to state a claim against Kim for deliberate indifference. Though he sets forth facts in support of the objective component—his serious need for dental care, as well as a need for treatment for the pain and suffering he endured— his complaint is devoid of factual allegations that Kim acted with deliberate indifference.

The subjective component of a deliberate indifference claim requires that the plaintiff allege the defendant acted with "a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. Deliberate indifference requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference." Id. at 837.

Courts distinguish between "cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." Alspaugh v. McConnell, 643 F.3d 162, 169 (6th Cir. 2011) (punctuation modified). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the

treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

Smith's claims amount to a disagreement with Kim's recommended course of treatment. Mere disagreement does not suffice to set forth a federal constitutional claim of deliberate indifference. Rhinehart v. Scutt, 894 F.3d 721, 744 (6th Cir. 2018) ("A disagreement with a course of medical treatment does not rise to the level of a federal constitutional claim under the Eighth Amendment.")

Because Smith has failed to set forth the subjective component of a deliberate indifference claim, the Court grants Kim's motion to dismiss.

**D.     Motion to Appoint Counsel**

Plaintiff moves for the appointment of counsel. (Dkt. 94). Under 29 U.S.C. § 1915(e)(1), a district court may, in its discretion, appoint counsel for an indigent civil litigant. Reneer v. Sewell, 975 F.2d 258, 261 (6th Cir. 1992) ("The appointment of counsel to civil litigants is a decision left to the sound discretion of the district court, and this decision will be overturned only when the denial of counsel results in fundamental unfairness impinging on due process rights.").

"Appointment of counsel in a civil case is not a constitutional right. It is a privilege that is justified only by exceptional circumstances." Lavado v. Keohane, 992 F.2d 601, 605–606 (1992) (punctuation modified). "In determining whether 'exceptional circumstances' exist, courts have examined 'the type of case and the abilities of the plaintiff to represent himself.'" Id. (quoting Archie v. Christian, 812 F.2d 250, 253 (5th Cir.1987)). This inquiry generally "involves a determination of the 'complexity of the factual and legal issues involved.'" Id. (quoting Cookish

v. Cunningham, 787 F.2d 1, 3 (1st Cir.1986)); see also Richmond v. Settles, 450 F. App'x 448, 452–453 (6th Cir. 2011).

This Court has had the opportunity to evaluate the complexity and needs of Smith's case when deciding the motions to dismiss and/or for summary judgment. It concludes that, at this stage, it is unnecessary to appoint counsel and denies Smith's motion without prejudice.

## III.    CONCLUSION

For the reasons explained above, the Court grants the following motions: (i) Dugan's motion to dismiss (Dkt. 36), (ii) Brindle, Nurenberg, Choi, and Washington's joint motion to dismiss and for summary judgment on the basis of exhaustion (Dkt. 40), (iii) Kim's motion to dismiss (Dkt. 56), (iv) Yoo's motion to dismiss and/or for summary judgment (Dkt. 59), (v) Gloria Smith's motion to dismiss (Dkt. 60), and (vi) Hays's motion for summary judgment (Dkt. 77).

It denies as moot Smith's motion for an extension (Dkt. 95) and denies Smith's motion to appoint counsel (Dkt. 94).

**SO ORDERED.**

Dated: September 29, 2025          s/Mark A. Goldsmith
Detroit, Michigan                 MARK A. GOLDSMITH
                                  United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 29, 2025.

                                  s/Joseph Heacox
                                  JOSEPH HEACOX
                                  Case Manager